UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER LOPES,

                                    Plaintiff,

                   v.

WESTCHESTER COUNTY, *et al.*,

                                    Defendants.

No. 18-CV-8205 (KMK)

OPINION & ORDER

Appearances:

Christopher Lopes
Malone, NY
*Pro se Plaintiff*

Thomas J. Bracken, Esq.
Bennett, Bricklin & Saltzburg, LLC
New York, NY
*Counsel for Defendant Aramark Correctional Services, LLC*

KENNETH M. KARAS, United States District Judge:

    Pro se Plaintiff Christopher Lopes ("Plaintiff"), currently incarcerated at Franklin

Correctional Facility ("Franklin"), brings this Action, pursuant to 42 U.S.C. § 1983, against

Westchester County, Aramark Correctional Services, LLC ("Aramark," or "Moving

Defendant"), Joseph K. Spano ("Spano"), Warden Frances Delgrosso ("Delgrosso"), and

Sergeant Martinez ("Martinez"; collectively, "Defendants"), alleging violations of his

constitutional rights under the First, Eighth, and Fourteenth Amendments.  (*See* Compl. (Dkt.

No. 2).)[1]  Before the Court is Aramark's Motion To Dismiss the Complaint (the "Motion"),

_____

    [1] Defendants Westchester County, Spano, Delgrosso, and Martinez have all been served
but have not filed their answers or otherwise responded, and have never appeared in this case.
(Dkt. Nos. 7, 10–12, 14–15.)  The Court notes that Moving Defendant is involved in Plaintiff's

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Moving Def.'s Not. of Mot. ("Not. of Mot.") (Dkt. No. 23).)  For the reasons explained herein, Moving Defendant's Motion is granted.

## I.  Background

### A.  Factual Background

The following facts, drawn from Plaintiff's Amended Complaint, are assumed to be true for the purposes of this Motion.  According to Plaintiff, the alleged incidents occurred at Westchester County Department of Correction ("WCDOC"), beginning on July 25, 2018 and continuing through the present.  (Compl. 2.)[2]

On July 25, 2018, while Plaintiff was "confined to 3SW of the . . . [WCDOC]," Plaintiff received a breakfast that "smelled horrible."  (*Id.* at 4.)  There were "several spots of black mold" on the tray, and plastic peeled from the tray into Plaintiff's food whenever he took a bite.  (*Id.*)  The following day, Plaintiff attempted to file a grievance about the meal with Martinez, but Martinez refused to accept it, instead responding that he did not "deal with bull shit" and instructing Plaintiff to save his "grievance shit" for a different sergeant, "like Scott."  (*Id.*)  On July 29, 2018, Plaintiff received a food tray that was covered in "puddles of molded water,"

---

allegations related to the poor food conditions, and does not appear to be involved in his claims of violations of his rights under the First and Fourteenth Amendments.  Defendants involved in those allegations are the ones who have failed to appear, and the Court will not herein consider dismissing claims against Defendants who have been served but have failed to appear.  Plaintiff may consider seeking default judgments against Defendants who have not answered. *See Thompson v. Booth*, No. 16-CV-3477, 2018 WL 4760663, at *12 (S.D.N.Y. Sept. 28, 2018) (stating that the court could enter default judgment against defendants who had been served but had failed to appear); *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 332 (S.D.N.Y. Sept. 9, 2014) (instructing the plaintiff to consider seeking a default judgment against a defendant who had been served but failed to appear).

[2] The pages of Plaintiff's Complaint are inconsistently numbered.  Thus, the Court refers to the ECF-stamped page numbers at the top of the document to avoid confusion.

which Plaintiff thought had come from the tray that was stacked on top of his. (*Id.*) Plaintiff asked to replace the tray, but his request was denied. (*Id.*) On July 30, 2018, Plaintiff noticed that his juice container was "covered in black mold," and, as a result, he was unable to drink from it. (*Id.*) On the same day, Plaintiff received undercooked and "raw" meat, and when he asked for a replacement meal, he was told that he could cook the meat in the microwave. (*Id.* at 5.) Plaintiff attempted to file another grievance with Martinez, but Martinez again refused to accept it, calling Plaintiff a "cry baby" and telling him that he would not accept grievances related to Aramark. (*Id.*) According to Plaintiff, he receives undercooked meat four to five times a week, and despite complaining, does not receive new meals. (*Id.*)

On August 5, 11, 16, 24, and 29, 2018, Plaintiff found human hair in his food. (*Id.*) Plaintiff alleges that "inmate workers" comb or pick their hair near the "food preparation table," do not wear gloves or hairnets, and are not supervised when they prepare meals. (*Id.*) On these dates, Plaintiff complained about his food, but he was not provided with replacement meals. (*Id.*) Instead, Martinez told Plaintiff that because Plaintiff liked to complain, he would go "to the old jail." (*Id.*) Plaintiff also alleges that on August 29, 2018, he tried to submit three grievances to Martinez, but Martinez again refused to accept the grievances, citing a "policy that prohibits him from accepting" them. (*Id.* at 8.) Subsequently, Plaintiff was transferred to the "old jail 1-East housing unit," which according to Plaintiff, is a "form of punitive segregation" to which "countless inmates . . . disliked by the administration" are sent without receiving disciplinary hearings. (*Id.* at 5–6.) For example, when an inmate receives a disciplinary report, he is sent to the "old jail or pen" and is "placed on keeplock pending a hearing." (*Id.* at 6.) Thus, in Plaintiff's view, this housing unit is "a form of discrimination and liberty interest due process violations because other section[s] of the jail are not confined to this magnitude." (*Id.* at 5.)

On August 3 and 31, 2018, Plaintiff found a used band-aid and a hard piece of plastic in his food. (*Id.* at 6.) He asked for a replacement meal, which was denied. More generally, Plaintiff's trays "always contained old food" and leftovers from previous meals due to improper cleaning, which caused Plaintiff to become sick on five occasions. (*Id.*) Plaintiff has suffered from nausea, diarrhea, stomach cramps, vomiting, headaches, "shakes," blurred vision, dehydration, and a "fatigued feeling through[out] the day" as a result of the food at WCDOC. (*Id.* at 3.) Plaintiff claims that Delgrosso and Spano have directed supervisors not to accept grievances related to Aramark, even though Delgrosso and Spano have received notice about the conditions of the food at WCDOC because they have been named in "dozens of food[-]related grievances and lawsuits," and because these Defendants "personally investigate and respond to all food[-]related grievances." (*Id.* at 7.) According to Plaintiff, Aramark and Westchester County have been named in approximately 60 similar federal lawsuits, but they continue to fail to remedy the situation. (*Id.*) Plaintiff seeks $10,000,000 in compensatory damages and $20,000,000 in punitive damages. (*Id.* at 9.)

B. Procedural Background

Plaintiff filed his Complaint on September 6, 2018. (*See* Compl.) Plaintiff's request to proceed in forma pauperis ("IFP") was granted on October 15, 2018. (Dkt. No. 5.) On October 18, 2018, the Court directed service on Defendants. (Dkt. No. 7.) After receiving an extension to file a response to the Complaint, (Dkt. No. 18), Moving Defendant filed a Pre-Motion Letter on January 22, 2019, pursuant to the Court's individual rules, (Dkt. No. 19), and the Court set a briefing schedule for Defendant's Motion, (Dkt. No. 22). On March 8, 2019, Moving Defendant filed the instant Motion. (Not. of Mot.; Moving Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 24).) On March 28, 2019, counsel for Moving Defendant informed the Court

that the Motion had been sent to Plaintiff at the wrong correctional facility. (Dkt. No. 27.)

Moving Defendant re-sent the Motion and related documents to Plaintiff at Franklin but received

the envelope back on March 27, 2019 due to a problem with the inmate identification number on

the mailing. (*Id.*) Moving Defendant once again re-sent the Motion and related documents on

March 28, 2019, using the correct inmate number. (*Id.*) Plaintiff did not file a response in

opposition to Moving Defendant's Motion, and, therefore, Moving Defendant did not file a

reply. The Court now deems the Motion fully submitted.

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation

marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to

relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also*

*Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Moving Defendant's Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

B. Analysis

Moving Defendant argues, among other things, that Plaintiff fails to state a *Monell* claim against Aramark. (Def.'s Mem. 8–10.)[3] "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is

---

[3] Moving Defendant states that for the purposes of this Motion only, it concedes to being deemed a state actor. (Def.'s Mem. 8 n.1.) Thus, the principles articulated in *Monell*, which addresses municipal liability, may be applied to Moving Defendant. The Court notes that in any event, "[i]n determining whether or not a private employer may be held liable in a § 1983 claim, courts are guided by the principles articulated in *Monell* . . . and its progeny." *Torres v. Aramark Food*, No. 14-CV-7498, 2015 WL 9077472, at *10 (S.D.N.Y. Dec. 16, 2015) (citations omitted); *see also Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses."); *Gitter v. Target Corp.*, No. 14-CV-4460, 2015 WL 5710454, at *3 n.4 (S.D.N.Y. Sept. 29, 2015) ("The Second Circuit has extended *Monell*'s rationale to private businesses." (citation omitted)). The Court may therefore apply the *Monell* analysis to Moving Defendant.

required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs, Okl. v. Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). Rather, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008).

A plaintiff may satisfy the "policy, custom[,] or practice" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations and quotation marks omitted); *see also Patterson v. County of Oneida*, 375 F.3d 206, 227–28 (2d Cir. 2004) (describing methods of establishing *Monell* liability). Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional*

violation. There must at least be an affirmative link between[, for example,] the training

inadequacies alleged, and the particular constitutional violation at issue." (emphasis in original));

*see also Simms v. City of New York*, 480 F. App'x 627, 629 (2d Cir. 2012) (finding that the

plaintiff "must 'demonstrate that, through its deliberate conduct, the [entity] itself was the

moving force behind the alleged injury'" (citation and alteration omitted)). Thus, Plaintiff

cannot merely allege the existence of a policy or custom but "must allege facts tending to

support, at least circumstantially, an inference that such a municipal policy or custom exists."

*Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citation omitted).

To the extent Plaintiff alleges that Moving Defendant endorsed or established a policy

prohibiting inmates from filing Aramark-related grievances, this claim fails. The Complaint

alleges that Delgrosso and Spano, non-Aramark Defendants, created the policy and directed

supervisors not to accept "Aramark food[-]related grievances." (Compl. 7.) Plaintiff makes no

allegations that Moving Defendant was involved in devising or implementing this policy, or had

an independent ability to accept or refuse grievances. Further, beyond generally stating that

Moving Defendant has been named in other federal lawsuits for "similar conduct," (*id.*), Plaintiff

does not detail what that conduct is, and does not allege that Moving Defendant knew about the

grievance policy at WCDOC. These allegations are insufficient to allege that an Aramark policy

was "the 'moving force' behind a constitutional violation." *See Ackridge v. Aramark Corr. Food

Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *13 (S.D.N.Y. Mar. 30, 2018) (finding that the

plaintiff did not demonstrate the existence of an Aramark policy or custom because the plaintiff

alleged that WCDOC was responsible for the policy at issue and did not allege that Aramark was

involved in WCDOC policies and procedures or knew of related constitutional violations).

Liberally construed, Plaintiff also seeks to establish *Monell* liability based on the third and fourth prongs set forth in *Brandon*. However, Plaintiff "does not [sufficiently] allege the existence of any policy, any actions taken or decisions made by any Aramark policymaking officials, any systemic failures to train or supervise, or any practices so widespread that they practically have the force of law." *Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at \*4 (S.D.N.Y. July 25, 2019) (record citation omitted). Plaintiff alleges that the food workers are "not supervised when preparing meals," that they do not wear gloves or hairnets, and that they "comb[] or pick[]" their hair near the food preparation area. (Compl. 5.) However, Plaintiff's Complaint does not contain sufficient factual matter to state a claim against Moving Defendant for failure to supervise. Although "[a] municipality's failure to properly train [and/or supervise] its employees can under certain circumstances give rise to *Monell* liability, . . . a claim based on this theory must still be properly pled under *Iqbal*." *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at \*2 (E.D.N.Y. Sept. 28, 2011) (citation and footnote omitted), *aff'd*, 480 F. App'x 627 (2d Cir. 2012). "To establish *Monell* liability premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." *Treadwell v. County of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at \*4 (S.D.N.Y. Mar. 30, 2016) (citation omitted); *see also Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at \*3 (S.D.N.Y. Feb. 15, 2011) (explaining that a plaintiff may demonstrate the existence of a custom or policy by alleging "a failure by policymakers to provide adequate . . . supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees" (citations and footnote omitted)).

Here, Plaintiff has not pled facts sufficient to establish inadequate supervision, amounting to deliberate indifference, by Moving Defendant. First, Plaintiff does not allege *who* failed to supervise the food workers; thus, it is not even clear that this claim applies to Moving Defendant. Second, Plaintiff does not detail any other facts to suggest that Moving Defendant lacks "a relevant training or supervisory program," or that it "was otherwise deliberately indifferent to food preparation problems." *Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (dismissing *Monell* claim where the plaintiff alleged a failure to supervise kitchen workers who did not wear hairnets, among other shortcomings, because the complaint was "devoid of any detailed factual allegations" about WCDOC's lack of training or supervisory program or its deliberate indifference to food preparation); *see also Rivera v. Westchester County*, No. 18-CV-8354, 2019 WL 3958425, at *5 (S.D.N.Y. Aug. 22, 2019) (finding that the plaintiff's claim that Aramark failed to train and supervise its staff was a "boilerplate assertion" and that the plaintiff had "cited no specific deficiency in Aramark's training or supervision protocols" (citation, alteration, and quotation marks omitted)); *Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *4–5 (S.D.N.Y. Mar. 29, 2019) (dismissing *Monell* claim against Aramark where the plaintiff did not allege, inter alia, any systemic failures to train or supervise).

Further, although under some circumstances, a plaintiff may be able to establish a municipal defendant's deliberately indifferent failure to supervise by showing "that the need for more or better supervision to protect against constitutional violations was obvious" from the fact that there "were repeated complaints of civil rights violations," and that "the complaints [were] followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents," Plaintiff has failed to establish a claim on these grounds. *Shepherd v. Powers*,

No. 11-CV-6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (citations and quotation

marks omitted). Plaintiff alleges that Moving Defendant has been named in "approx[imately] 60

federal lawsuits for similar conduct," but has "fail[ed] to intervene and prevent further harm."

(Compl. 7.) Plaintiff does not provide the names of any of these lawsuits, and does not set forth

factual details to allow the Court to assess whether Moving Defendant's conduct in these cases

was, in fact, similar to the conduct alleged here. "These lacking details doom Plaintiff's

Complaint." *Jackson*, 2019 WL 3338020, at *4 (citations omitted) (collecting cases). Indeed,

cases where the plaintiffs have successfully established deliberate indifference by pointing to

past grievances and lawsuits have named and provided factual details on the previous suits. *See*

*Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *19–21 (S.D.N.Y. Mar.

26, 2015) (holding that the plaintiff sufficiently alleged the need for better training or supervision

where the plaintiff listed and detailed nine other complaints raising similar allegations against the

same defendants); *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987, at *4–5

(S.D.N.Y. Nov. 21, 2014) (holding that the plaintiff sufficiently alleged the need for better

training or supervision where the plaintiff listed and detailed 17 other complaints over a seven-

year period raising similar allegations against the same defendants).

For the same reasons, Plaintiff's claim regarding the number of federal lawsuits in which

Aramark is a defendant is insufficient to plead "a practice so consistent and widespread that,

although not expressly authorized, constitutes a custom or usage of which a supervising policy-

maker must have been aware." *Brandon*, 705 F. Supp. 2d at 276–77 (citations omitted); *see*

*Rutherford v. Westchester County*, No. 18-CV-4872, 2020 WL 433841, at *12 (S.D.N.Y. Jan. 28,

2020) (finding that the plaintiff insufficiently alleged a policy or custom when he named several

lawsuits against the defendants for "similar conduct" but did not describe the conduct alleged in

the suits and did not explain "whether and how the conduct alleged in those suits was widespread and consistent" (collecting cases)); *Jackson*, 2019 WL 3338020, at *4 (determining that although the plaintiff "summarily allege[d]" that the defendants were aware of food-related problems because of previous lawsuits and grievances, the plaintiff failed to provide any facts about these lawsuits and grievances). Therefore, Plaintiff fails to plausibly allege claims for a failure to supervise or a consistent and widespread practice of which Moving Defendant must have been aware.

Accordingly, Plaintiff's claims against Moving Defendant must be dismissed. *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *Voltaire v. Westchester Cty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *7 (S.D.N.Y. Aug. 29, 2016) (dismissing the plaintiff's claims against municipal employees in their official capacities where the complaint "provided no facts that would allow [the court] to plausibly infer that [the defendants] acted pursuant to a municipal custom or practice").[4]

---

[4] Moving Defendant also argues that Plaintiff's injuries are not recoverable under the Prison Litigation Reform Act ("PLRA"), (Defs.' Mem. at 6–7), Plaintiff does not have a constitutional right to an internal grievance process, (*id.* at 7–8), and Plaintiff's conditions of confinement claim does not rise to the level of a constitutional violation, (*id.* at 10–13). Because Plaintiff's claims against Moving Defendant must be dismissed for failure to state a *Monell* claim, the Court need not resolve these additional arguments. Plaintiff will have the opportunity to respond to these arguments if he decides to file an amended complaint.

III.  Conclusion

For the foregoing reasons, Moving Defendant's Motion To Dismiss is granted.[5]  Because

this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice.  Plaintiff may

file an Amended Complaint within 30 days of the date of this Opinion.  The Amended Complaint

should contain appropriate changes to remedy the deficiencies in this Opinion.  Plaintiff is

advised that the Amended Complaint will replace, not supplement, the instant Complaint, and

therefore must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the

Court to consider.  If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed

with prejudice.

The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No.

23), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:          March 25, 2020
               White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[5] The Court again notes that nearly identical allegations about the poor food quality and sanitation have been made in numerous other actions against Westchester County and Aramark in this District.  *See Dawson v. Westchester County*, No. 18-CV-7790, 2019 WL 3408899, at *6 n.6 (S.D.N.Y. July 29, 2019) (collecting cases).  As previously instructed, "[t]he Court expects that Counsel for [Moving] Defendant[] also takes note and will discuss the serious allegations raised in these cases with h[is] client[]." *Id.*