UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER LOPES,

                                    Plaintiff,

v.

WESTCHESTER COUNTY, *et al.*,

                                    Defendants.

---

No. 18-CV-8205 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Christopher Lopes
Malone, NY
*Pro se Plaintiff*

Sean Timothy Carey
Westchester County Attorney's Office
White Plains, NY
*Counsel for County Defendants*

KENNETH M. KARAS, United States District Judge:

       Pro se Plaintiff Christopher Lopes ("Plaintiff"), currently incarcerated at Governeur

Correctional Facility ("Governeur"), brings this Action, pursuant to 42 U.S.C. § 1983, against

Aramark Correctional Services, LLC ("Aramark"), Westchester County, Commissioner Joseph

K. Spano ("Spano"), Assistant Warden Francis Delgrosso ("Delgrosso"), and Sergeant Martinez

("Martinez"; collectively, "County Defendants"), alleging violations of his constitutional rights

under the First, Eighth, and Fourteenth Amendments.  (*See* Am. Compl. (Dkt. No. 43).)  Before

the Court is County Defendants' Motion To Dismiss the Complaint (the "Motion"), pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (County Defs.' Not. of Mot. ("Not. of Mot.") (Dkt. No. 53).)[1]  For the reasons explained herein, County Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

The following facts, drawn from Plaintiff's Amended Complaint, are assumed to be true for the purposes of this Motion.  According to Plaintiff, the alleged incidents occurred at Westchester County Department of Correction ("WCDOC"), beginning on July 25, 2018 and continuing through the present.  (*See* Am. Compl.)[2]

On July 25, 2018, while Plaintiff was confined at WCDOC he received a breakfast that "smelled horrible."  (*Id.* at 1.)  There were "several spots of black mold" on his tray, and plastic peeled from the tray into Plaintiff's food.  (*Id.*)  The following day, Plaintiff attempted to file a grievance about the meal with Martinez, but he refused to accept the complaint, instead responding that he did not "deal with bullshit" and instructed Plaintiff to save his "grievance shit" for a different sergeant, "like Scott."  (*Id.*)  On July 29, 2018, Plaintiff received a tray that was covered in "puddle of molded water," which Plaintiff thought had come from the tray that was stacked on top of his.  (*Id.*)  Plaintiff asked to replace the tray, but his request was denied. (*Id.*)  On July 30, 2018, Plaintiff noticed that his juice container was "covered in black mold," and, as a result, he was unable to drink from it.  (*Id.*)  On the same day, Plaintiff received

---

[1] Plaintiff's Amended Complaint was dismissed against Defendant Aramark in a brief separate Order as it contains virtually identical allegations to Plaintiff's original Complaint and is therefore dismissed on the same grounds.  (*See* Order, Dkt. No. 65.)

[2] Plaintiff alleges that the food-related violations at the WCDOC occurred from July 2018 to the present.  However, Plaintiff filed a change of address on March 19, 2019 with the Court which indicated that he was transferred to another facility.  (*See* Dkt. No. 25.)  Thus, the Court will only consider conduct that occurred at WCDOC up until Plaintiff's transfer.

"undercooked and raw" meat and when he asked for a replacement meal, he was told that he could cook the meal in the microwave.  (*Id.*)  Plaintiff attempted to file another grievance with Martinez, but he again refused to accept it, calling Plaintiff a "cry baby" and telling him that he would not accept grievances related to Aramark.  (*Id.* at 2.)  According to Plaintiff, he receives undercooked meat four to five times a week, and despite complaining, does not receive new meals.  (*Id.*)

On August 5, 11, 16, 24, and 29, 2018, Plaintiff found human hair in his food.  (*Id.*) Plaintiff alleges that "inmate workers" comb or pick their hair near the "food preparation table," do not wear gloves or hairnets, and are not supervised when they prepare meals.  (*Id.*)  On these dates, Plaintiff complained about his food, but he was not provided with replacement meals. (*Id.*)  Instead, Martinez told Plaintiff that because Plaintiff liked to complain, he would go "to the Old Jail."  (*Id.*)  Plaintiff also alleges that on August 29, 2018, he tried to submit three grievances to Martinez, but he once more refused to accept the grievances, citing a "policy that prohibits him from accepting" them.  (*Id.*)  Subsequently, Plaintiff was transferred to the "Old Jail 1 East Unit," which according to Plaintiff, is a "form of punitive segregation" to which "countless inmates . . . dislike[d] by the administration" are sent without receiving disciplinary hearings. (*Id.*)  For example, when an inmate receives a disciplinary report, the inmate is sent to the "Old Jail or Pen" and is "placed on keeplock pending a he[a]ring."  (*Id.*)  Thus, in Plaintiff's view, this housing unit is "a form of discrimination and liberty interest due process violations because other sections of the jail are not confined to this magnitude."  (*Id.*)

On August 3 and 31, 2018, Plaintiff found a used Band-Aid and a hard piece of plastic in his food.  (*Id.*)  He asked for a replacement meal, which was denied.  More generally, Plaintiff's trays "always contained old food" and "leftovers" from previous meals due to improper cleaning,

which caused Plaintiff to become sick on five occasions.  (*Id.* at 2–3)  Plaintiff has suffered from "nausea, diarrhea, stomach cramps, vomiting, headaches, shakes[,] blurred vision, dehydration, and a fatigued feeling throughout the day as a result of the food at WCDOC."  (*Id.*)  Plaintiff claims that Delgrosso and Spano have directed supervisors not to accept grievances related to Aramark, even though Delgrosso and Spano have received notice about the conditions of the food at WCDOC because they have been named in "[d]ozens of food related grievances and lawsuits," and because these Defendants "personally investigate and respond to all food related grievances."  (*Id.* at 3.)

While Plaintiff does not really distinguish between various Defendants or identify the precise nature of his claims under the First, Eighth, and Fourteenth Amendments, the Court interprets the Plaintiff's Amended Complaint liberally so as "to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted).  The Court discerns seven civil rights claims, each brought under 42 U.S.C. § 1983.  Plaintiff's claims are as follows: (1) that the food conditions at Westchester County Jail ("WCJ") were so poor that such conditions violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment (the "Food Claim"); (2) that County Defendants violated his constitutional rights by failing to accept his grievances (the "Grievance Claim"); (3) that Plaintiff was transferred to the WCJ's "Old Jail 1 East Unit" (the "Old Jail") and placed on keeplock, a more restrictive type of confinement (the "Procedural Due Process Claim"); (4) that Plaintiff was transferred to the Old Jail and placed in keeplock in retaliation for "complaining" (the "First Amendment Retaliation Claim"); (5) that the routine maintained at the Old Jail is more restrictive than the routine maintained elsewhere in WCJ and as such is discriminatory (the "Equal Protection Claim"); (6) that the routine maintained at the

4

Old Jail violated Plaintiff's substantive due process right (the "Substantive Due Process Claim"); and (7) a *Monell* claim against Westchester County (the "*Monell* Claim").  The Court addresses each potential claim in turn.

According to Plaintiff, Aramark and Westchester County have been named in approximately 60 similar federal lawsuits, but continuously fail to remedy the food situation. (*Id.*)  Plaintiff seeks $10,000,000 in compensatory damages and $20,000,000 in punitive damages.  (*Id.*)

B.  Procedural Background

Plaintiff filed his Complaint on September 6, 2018.  (*See* Compl. (Dkt. No. 2).) Plaintiff's request to proceed in forma pauperis ("IFP") was granted on October 15, 2018.  (Dkt. No. 5.)  On March 8, 2019, Aramark filed a Motion To Dismiss.  (Dkt. No. 23.)  Plaintiff did not file a response in opposition to Aramark's Motion To Dismiss, and as such, Aramark did not file a reply.  (Dkt. No. 31.)  The Court deemed the Motion to Dismiss fully submitted.  (Dkt. No. 33.) On March 25, 2020, in an Opinion and Order the Court granted Aramark's Motion To Dismiss because Plaintiff failed to allege a *Monell* claim.  (*Id.*)[3]  The Court provided Plaintiff the opportunity to file an Amended Complaint within 30 days of its Opinion.  (*Id.*)  Plaintiff failed to do so within 30 days, so the Court issued an Order To Show Cause.  (Dkt. No. 34.)  Plaintiff responded to the Order requesting that the Court not dismiss the case.  (Dkt. No. 37.)  The Court allowed Plaintiff to file an Amended Complaint by August 3, 2020.  (*Id.*)  Plaintiff filed his Amended Complaint on July 1, 2020.  (Am. Compl.)  County Defendants filed a Motion To

_____

[3] County Defendants had all been served but did not file their answers or otherwise respond to Plaintiff's original Complaint, and had previously never appeared in this case.  (Dkt. Nos. 7, 10-12, 14-15.)  As such, at the time the Court did not consider dismissing claims against County Defendants who were served but failed to appear.

Dismiss on August 7, 2020.  (Not. of Mot.)  On the same day, County Defendants filed a

Memorandum of Law in Support of the Motion To Dismiss.  (Defs.' Mem. of Law in Supp. of

Mot. ("Defs.' Mem.") (Dkt. No. 55).)  Plaintiff did not file a response in opposition to the

Motion and therefore, County Defendants did not file a reply.  The Court now deems the Motion

fully submitted.

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement."  *Id.*  (alteration and quotation marks omitted).  Instead, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from

conceivable to plausible, [the] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679

("Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering County Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same).  And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes*, 723 F.3d at 403 (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation

marks omitted).  However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," C*hambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

B.  Analysis

1. Section 1983

"To state a claim under . . . § 1983, the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right."  *Sykes*, 723 F.3d at 405–06.  Allegations which are nothing more than "broad, simple, and conclusory statements are insufficient to state a claim under § 1983."  *Alfaro Motors Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).  As the Second Circuit has "repeatedly held, complaints relying on . . . civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987); *see also Dinapoli v. DPA Wallace Ave II, LLC*, No. 07-CV-1409, 2009 WL 755354, at *3 (S.D.N.Y. Mar. 23, 2009) ("The court will dismiss a complaint that consists of nothing more than naked assertions, and sets forth no facts upon which a court could find a constitutional violation." (alterations and quotation marks omitted)).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the

alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citations, italics, and quotation marks omitted).  In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff has failed to demonstrate that Spano, Delgrosso, and Martinez were personally involved in the alleged food-related grievances.  In fact, this Court has deemed similar allegations as insufficient to sustain a § 1983 claim of personal involvement in other cases.  *See Rutherford v. Westchester County*, No. 18-CV-4872, 2020 WL 433841, at *10–11 (S.D.N.Y. Jan. 28, 2020) (citing *Rivera v. Westchester County*, No. 18-CV-8354, 2019 WL 3958425, at *3 (S.D.N.Y. Aug. 22, 2019).  Plaintiff alleges that Martinez refused to accept his food related grievances.  (Am. Compl. at 1-2.)  In addition, Plaintiff alleges that Delgrosso and Spano responded similarly and directed supervisors not to accept food related grievances.  (*Id.* at 3.)  As this Court held before, such conclusory allegations that these Defendants knew of but failed to meaningfully remedy the alleged misconduct is insufficient.  There is no allegation that

Martinez, Delgrosso, or Spano participated directly in the preparation of food at all, established a policy or custom that allowed contaminated food to be provided to inmates, failed to follow a policy or custom on food preparation or were otherwise grossly negligent in allowing others to prepare food without following proper procedures, failed to remedy food preparation problems after being notified of the issues, or were deliberately indifferent to Plaintiff's condition after being informed of his illness and its cause. *See Grullon*, 720 F. 3d at 139. Nor does the bare fact that two of these Defendants appear to hold supervisory roles change the analysis, for a defendant "cannot be held liable for the service of rotten [food] based on a respondeat superior theory." *Reznickcheck v. Molyneaux*, No. 13-CV-1857, 2014 WL 3746540, at *2 (E.D. Pa. July 29, 2014) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014) ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct." (citations omitted)). There are, in sum, no alleged facts plausibly establishing that Martinez, Delgrosso, or Spano was personally involved in the alleged unconstitutional deprivation at issue. *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation). Plaintiff's conclusory allegations against Spano, Delgrosso, and Martinez are insufficient to support an Eighth Amendment claim against County Defendants and therefore are dismissed.

2. Eighth Amendment

The Eighth Amendment guarantees freedom from "cruel and unusual punishment." U.S. Const., amend. VIII.  In prisons, inmates have the right to be free from punishments that impose an excessive risk to inmate health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In order to establish a violation of the Eighth Amendment, an inmate must demonstrate that (1) the challenged condition is objectively serious, and (2) the official responsible acted with deliberate indifference to inmate health or safety.  *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002); *see also Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

To satisfy the first, "objective prong," a plaintiff must sufficiently allege "that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017).  In particular, the Second Circuit has held that the Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation and quotation marks omitted); *see also Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (explaining that "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain[,] exists." (citation and quotation marks omitted)).

To satisfy the "subjective prong," the plaintiff must sufficiently allege that a defendant acted "with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29.  "[T]he Supreme Court has instructed that 'deliberate indifference' roughly means

11

'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and

disregarded), or objectively (what a reasonable person knew or should have known)." *Id.*

Plaintiff alleges that beginning on July 25, 2018 through his transfer from WCJ, the food

served to him by County Defendants and Aramark was so substandard it violated his

constitutional rights. (Am. Compl. 2-3.) Plaintiff's allegations include that on separate, but in

some instances overlapping occasions, the food smelled horrible, contained several spots of

black mold, plastic peeled from the tray into his food, and that he received raw and undercooked

meat. (*Id.* at 1-2.) Plaintiff also alleged that hard plastic, human hair, a Band-Aid, and leftover

food were also served with his meals. (*Id.* at 2.) As a result of these food conditions, Plaintiff

notes that he experienced "nausea, diarrhea, stomach cramps, vomiting, headaches, shakes[,]

blurred vision, dehydration, and a fatigued feeling throughout the day." (*Id.* at 3.) Plaintiff

claims that Spano and Delgrosso "received notice about the conditions of the food at WCDOC

because they have been named in [d]ozens of food related grievances." (*Id.* at 3.) For starters, as

a matter of law, Plaintiff's alleged injuries, described above, fail to satisfy the objective

requirement that Plaintiff suffered from a "condition of urgency . . . that may produce death,

degeneration, or extreme pain" or that "threatened his health or safety." *Torres v. Aramark*

*Food*, No. 14-CV-7498, 2015 WL 9077472, at *7–8 (S.D.N.Y. Dec. 16, 2015) (finding that the

plaintiff's complaints of headaches, stress, and anguish were insufficient to satisfy the objective

prong of an Eighth Amendment claim); *see also Mortimer Excell v. Fischer*, No. 08-CV-945,

2009 WL 3111711, at *4 (N.D.N.Y. Sept. 24, 2009) ("[C]onclusory allegations of heart, chest,

and stomach pain, without more, do not satisfy the objective prong of the Eighth Amendment.");

*Pagan v. Westchester County*, No. 12-CV-7668, 2014 WL 982876, at *17 (S.D.N.Y. Mar. 12,

2014) (holding that allegations that food caused severe stomach pain, nausea, vomiting, diarrhea,

and weight loss were insufficient to state a claim of serious deprivation), *on reconsideration*, 2015 WL 337403 (S.D.N.Y. Jan. 26, 2015); *Lunney v. Brureton*, No. 04-CV-2438, 2005 WL 121720, at *6 (S.D.N.Y. Jan. 21, 2005) (holding that allegations that the plaintiff was provided, on a daily basis, food that was cold and, on a few occasions, food that was spoiled were insufficient to satisfy the objective prong of an Eighth Amendment claim); *Maurice v. N.Y.C. Dep't of Corr.*, No. 93-CV-6008, 1997 WL 431078, at *3 (S.D.N.Y. July 30, 1997) (holding that the plaintiff had not alleged that he suffered from a sufficiently serious medical condition to implicate Eighth Amendment concerns where he alleged only that he suffered from stomach cramps and diarrhea as a result of eating a non-vegetarian meal).  Plaintiff's allegations regarding the physical manifestations of his food related grievances do not amount to the level required for an Eight Amendment violation.

### 3. Prison Grievances

Plaintiff's claim that Defendants Martinez, Delgrosso, and Spano violated his constitutional rights by failing to respond to his food grievances also fails to state a claim.  "It is well-established that inmates do not have a protected liberty interest in the processing of their prison grievances."  *Crichlow v. Fischer*, No. 15-CV-6252, 2017 WL 920753, at *7 (W.D.N.Y. Mar. 7, 2017); *see also Corley v. City of New York*, No. 14-CV-3202, 2017 WL 4357662, at *7 (S.D.N.Y. Sept. 28, 2017) ("[The p]laintiff did not have a liberty interest to access the [prison] grievance program that would provide a basis for a constitutional due process claim here."); *Njasang Nji v. Heath*, No. 13-CV-200, 2013 WL 6250298, at *6 (S.D.N.Y. Dec. 2, 2013) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." (citation omitted)); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL

13

2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that prison grievance procedures do not create a due-process-protected liberty interest."), *aff'd*, 548 F. App'x 29 (2d Cir. 2013); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment."). "Rather, in the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by [P]laintiff here: directly petitioning the government for redress of his claims." *Harris v. Westchester Cnty. Dep't of Corrs.*, No. 06-CV-2011, 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) (collecting cases). Consequently, "courts regularly dismiss claims brought to remedy alleged violations of inmate grievance procedures." *Martinez v. Schriro*, No. 14-CV-3965, 2017 WL 87049, at *3 (S.D.N.Y. Jan. 9, 2017) (citation and alteration omitted). Accordingly, any due process claim against County Defendants based on purported interference with the grievance process is also dismissed as it cannot form the basis of a constitutional violation.

### 4. First Amendment Retaliation

"Prisoners have a constitutional right to petition the government, and it is a violation of § 1983 for prison officials to retaliate against prisoners for the exercise of that right." *Bartley v. Collins*, No. 95-CV-10161, 2006 WL 1289256, at *4 (S.D.N.Y. May 10, 2006) (citing, inter alia, *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002)). To state a First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that . . . [D]efendant[s] took adverse action against . . . [P]laintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citation and alteration omitted); *see also Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (same). "[B]ecause virtually

any adverse action taken against a prisoner by a prison official[—]even those otherwise not rising to the level of a constitutional violation[—]can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed district courts to "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (citation and quotation marks omitted)).

An adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citation omitted).  In determining whether a prison official's conduct constitutes adverse action, "the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens." *Id.* (citation, quotation marks, and alterations omitted). "[T]he test . . .  is not whether [the] plaintiff himself was chilled (if that were the standard, no plaintiff likely would prevail, for the very commencement of a lawsuit could be used by [the] defendants to argue that the plaintiff was not chilled)." *Id.* at 354 (citation and alterations omitted).  In applying this test, however, it is plausible for keeplock confinement to constitute an adverse action for claims of retaliation.  *See Lashley v. Wakefield*, 367 F. Supp. 2d 461, 467 (W.D.N.Y. 2005) (collecting cases) (determining that twenty days of keeplock confinement constituted an adverse action).

Section 1983 plaintiffs must plausibly allege a "causal connection" between the protected conduct and the adverse action.  *Garcia v. Watts*, No. 08-CV-7778, 2009 WL 2777085, at *11 (S.D.N.Y. Sept. 1, 2009); *see also Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) (holding

that the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action" (citation, alteration, and quotation marks omitted)).  To meet this burden, Plaintiff must allege facts suggesting that the protected conduct was a "'substantial or motivating factor' in the prison officials' decision to take action against [him]." *Smith v. Christopher*, No. 06-CV-1196, 2008 WL 4283519, at *10 (N.D.N.Y. Sept. 16, 2008) (citing, inter alia, *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Van Dunk v. Brower*, No. 11-CV-4564, 2013 WL 5970172, at *8 (S.D.N.Y. Nov. 7, 2013) ("The element of intent [in a First Amendment retaliation claim] requires an assessment of what evidence, if any, demonstrates that Defendants' conduct 'was motivated by or substantially caused by [Plaintiff's] exercise of free speech.'" (second alteration in original) (citing *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994))); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 371 (S.D.N.Y. 2011) (same); *cf. Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017) (reinstating retaliation claim in part because there was evidence of "retaliatory animus" where plaintiff alleged that officers confronted him directly about his practice of filing grievances before they issued the allegedly false misbehavior report against him).

Plaintiff alleges that Martinez told him that because he likes to complain, he would be sent to the Old Jail.  (Am. Compl. at 3.)  However, Plaintiff does not allege that Martinez is the individual responsible for the decision to transfer him to the Old Jail.  *See generally id.*  Nor does Plaintiff identify which food related complaint resulted in the decision to send him to the Old Jail.  *Id.*  Plaintiff also fails to include when his alleged complaint was made, rendering it impossible to determine if there were any temporal proximity between his complaint and the transfer to the Old Jail that could constitute a cognizable First Amendment retaliation claim.  *Id.*

Even if liberally construed, the Court does not find allegations in the Amended Complaint

supporting a claim that Plaintiff engaged in speech that was protected, that County Defendants

acted against him, and that such action had a causal connection between the protected speech and

the adverse action.  Because Plaintiff's claims are not supported by specific and detailed factual

allegations and are conclusory, his First Amendment retaliation claim also fails.

### 5. Equal Protection

"[P]risoners are protected under the Equal Protection Clause of the Fourteenth

Amendment from invidious discrimination based on race."  *Wolff v. McDonnell*, 418 U.S. 539,

556 (1974); *see also* U.S. Const. amend. XIV, § 1 ("No State shall . . . deny to any person within

its jurisdiction the equal protection of the laws.").  "The Equal Protection Clause requires that the

government treat all similarly situated people alike."  *Harlen Assocs. v. Inc. Village of Mineola*,

273 F.3d 494, 499 (2d Cir. 2001).  "Although the prototypical equal protection claim involves

discrimination against people based on their membership in a vulnerable class, [the Second

Circuit] ha[s] long recognized that the equal protection guarantee also extends to individuals who

allege no specific class membership but are nonetheless subjected to invidious discrimination at

the hands of government officials."  *Id.*  "Where . . . a plaintiff does not claim to be a member of

a constitutionally protected class, he may bring an [e]qual [p]rotection claim pursuant to one of

two theories: (1) selective enforcement, or (2) 'class of one.'"  *Vaher v. Town of Orangetown*,

916 F.Supp.2d 404, 433 (S.D.N.Y. 2013); *see also Rankel v. Town of Somers*, 999 F. Supp. 2d

527, 544 (S.D.N.Y. 2014) (same).

To allege an Equal Protection Clause violation under a class-of-one theory, "the plaintiff

must allege that (i) no rational person could regard the circumstances of the plaintiff to differ

from those of a comparator to a degree that would justify the differential treatment on the basis

of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (citation and quotation marks omitted).  In other words, "a plaintiff asserting a 'class of one' equal protection claim must allege that the intentional disparate treatment alleged to state the first element of the claim was wholly arbitrary or irrational." *Vaher*, 916 F. Supp. 2d at 433 (some quotation marks omitted).  Plaintiffs proceeding under this theory "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (citation omitted); *see also Crippen v. Town of Hempstead*, No. 07-CV-3478, 2013 WL 1283402, at *6 (E.D.N.Y. Mar. 29, 2013) (noting that plaintiffs seeking to state a class-of-one claim "must demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects" (italics omitted)).

To state an equal protection claim "on a theory of selective enforcement or selective treatment, a plaintiff must show that: (1) 'he, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff.' " *Vaher*, 916 F. Supp. 2d at 433 (alterations omitted) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).  "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement," *LaTrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999), though there is some disagreement within the Second Circuit regarding the degree of similarity necessary to adequately allege an equal protection claim under this theory, *see Butler v.*

18

*Bridgehampton Fire Dist.*, No. 14-CV-1429, 2015 WL 1396442, at *4 (E.D.N.Y. Mar. 25, 2015) (recognizing the "split regarding the definition of 'similarly situated' in selective enforcement and class-of-one cases").  While some courts evaluate whether a comparator is similarly situated under the same standard used in "class of one" equal protection claims, *see, e.g., Kamholtz v. Yates County*, No. 08-CV-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) (noting that "[t]he level of similarity between [the] plaintiffs and the persons with whom they compare themselves must be extremely high" in both the selective enforcement and class-of-one contexts (citation omitted)), *aff'd*, 350 Fed. Appx. 589 (2d Cir. 2009), others apply a less demanding standard to selective enforcement claims, *see, e.g., Tower Props. LLC v. Village of Highland Falls*, No. 14-CV-4502, 2015 WL 4124499, at *8 (S.D.N.Y. July 7, 2015) (adopting "a less stringent standard" whereby the "[p]laintiff must identify comparators whom a prudent person would think were roughly equivalent" (citation, alterations, and quotation marks omitted)); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008) (explaining that a selective enforcement claim requires a plaintiff and comparator to be "similarly situated in all material respects" (citation omitted)).

Generally, whether two comparators "are similarly situated is a factual issue that should be submitted to the jury."  *Harlen Assocs.*, 273 F.3d at 499 n.2.  However, the Second Circuit has held that this rule is "not absolute" and explained that "a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met."  *Id.*  Thus, at the summary judgment stage of selective enforcement claims, courts ask whether based on the evidence, a reasonable jury could conclude that the plaintiff and the proposed comparators are similarly situated.  At the motion to dismiss stage, such evidence is not necessary; however, a court still must determine whether, based on a plaintiff's allegations in the

complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.  Thus, "[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim."  *Bishop v. Best Buy, Co.*, No. 08-CV-8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (citation and quotation marks omitted) (dismissing the plaintiff's equal protection claim because he failed to allege any similarly situated individuals who were treated differently); *see also DePrima v. N.Y.C. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *6 (E.D.N.Y. Mar. 20, 2014) (dismissing selective enforcement claim where the plaintiff's allegations lacked "any facts showing that [certain individuals] [were] similarly situated to [the] [p]laintiff" (emphasis omitted)); *Segreto v. Town of Islip*, No. 12-CV-1961, 2014 WL 737531, at *7–8 (E.D.N.Y. Feb. 24, 2014) (dismissing equal protection claim where the "[p]laintiffs merely allege[d] that others [were] allowed to get permits, but it [wa]s unclear whether those properties ha[d] any circumstances similar to [the] [p]laintiffs"); *Vaher*, 916 F. Supp. 2d at 434 ("While a plaintiff is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage, the court 'still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.'") (quoting *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 697–98 (S.D.N.Y. 2011)).

Plaintiff's Equal Protection claim is wanting for several reasons.  Plaintiff does not allege he is a member of a protected class.  Plaintiff does not allege that he or any other inmate was treated differently on an impermissible basis.  Plaintiff does not compare himself to any other inmate or allege that he has been intentionally treated differently from other similarly situated

inmates.  Instead, to the extent that he does identify a group at all, he describes inmates who are disciplined and disliked by the administration.  (*See* Am. Compl. at 3.)  However, "inmates are not, by virtue of being inmates, members of a protected class."  *Randolph v. DOCCS*, No. 17-CV-700, 2018 WL 4374006, at *5 (S.D.N.Y. Sept. 13, 2018).  Insofar as Plaintiff could demonstrate as much, or that inmates are in a class of one, his Equal Protection claim would still fail.  To establish a claim for Equal Protection, a plaintiff must demonstrate that he is treated differently than others who are similarly situated.  But plaintiff has failed to offer "any meaningful comments, actions, or examples of similarly-situated persons outside of [his] protected class being treated differently."  *Banks v. County Of Westchester*, 168 F. Supp. 3d 682, 696 (S.D.N.Y. 2016) (alteration in original) (citation omitted).  Therefore, Plaintiff's Equal Protection claim is also dismissed.

### 6. Substantive Due Process

"To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation and alteration omitted).  The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings.  *See Wolff*, 418 U.S. at 563–72 (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment).  However, the Supreme Court has clarified that "[p]rison discipline implicates a liberty interest [only] when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The Second Circuit has further explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test."  *Hanrahan v. Doling*,

331 F.3d 93, 97 (2d Cir. 2003) (quotation marks omitted).  The duration of disciplinary confinement, however, is "not the only relevant factor," and the Second Circuit has "explicitly avoided a bright line rule that a certain period of . . . confinement automatically fails to implicate due process rights."  *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citations omitted).  Indeed, "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement . . . rises to the level of atypical and severe hardship," and, therefore, courts should consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions."  *Id.* (citations and quotation marks omitted); *see also Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." (citation omitted)).

As a guidepost to determine whether due process protections are required in the prison context, the Second Circuit has instructed that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required."  *Palmer*, 364 F.3d at 64–65 (citation and quotation marks omitted); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015) (same).  Indeed, the Second Circuit has cautioned that, "[i]n the absence of a detailed factual record, [it has] affirmed dismissal of due process claims only in cases where the period of time spent in [confinement] was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in [Special Housing Unit]—and there was no indication that the plaintiff endured unusual . . . conditions."  *Palmer*, 364 F.3d at 65–66.

22

A disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). "In the context of prison disciplinary hearings, the Second Circuit has said that its 'conception of an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say, with . . . utter certainty . . . , how he would assess evidence he has not yet seen.'" *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL 6028212, at *7 (S.D.N.Y. Dec. 5, 2011) (italics omitted) (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)).

Plaintiff has not established a liberty interest or demonstrated that County Defendants deprived him of that interest as a result of insufficient process. Instead, Plaintiff merely asserts that he did not receive a disciplinary hearing, was placed on keeplock pending a hearing, and that the housing unit he was placed in was a "form of discrimination and liberty interest due process violations because other sections of the jail are not confined to this magnitude." (Am. Compl. at 2.) Such conclusory allegations are insufficient. Plaintiff also has failed to provide a detailed enough record of the conditions of his confinement relative to ordinary prison conditions – instead he simply states that the unit he was transferred to was more restrictive – with nothing more to support such an allegation. (*Id.*) Furthermore, courts in the Second Circuit have held that, where a substantive due process claim is duplicative of an equal protection claim, the substantive due process claim should be dismissed. *See Segreto*, 2014 WL 737531, at *5; *see also Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1351 n. 8 (2d Cir. 1994). As is the case here, Plaintiff's substantive due process claim is duplicative of his Equal Protection claim and therefore must also be dismissed.

23

7. *Monell* Claim

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes*, 723 F.3d at 405–06 (citation omitted). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691. Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Apr. 16, 2010); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Jan. 3, 2011) (dismissing a claim against the county because the complaint "[did] not allege the existence of an unconstitutional custom or policy"), *adopted sub nom. Arnold v. Westchester Cnty. Dep't of Corr.*, No. 09-CV-3727, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of

respondeat superior."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citation and

italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting

that "a municipal entity may only be held liable where the entity *itself* commits a wrong").

Instead, there must be a "direct causal link between a municipal policy or custom and the alleged

constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of

St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible

when, and only when, their official policies cause their employees to violate another person's

constitutional rights.").  "In determining municipal liability, it is necessary to conduct a separate

inquiry into whether there exists a 'policy' or 'custom.'"  *Davis v. City of New York*, 228 F.

Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).  Normally, "a custom

or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere

employee of the [municipality]."  *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma v.

Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of

unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the

incident includes proof that it was caused by an existing, unconstitutional municipal policy,

which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*,

200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient

to establish the affirmative link between the municipal policy or custom and the alleged

unconstitutional violation.").

        A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a

supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Roe*, 542 F.3d at 37 (describing the second category for establishing *Monell* liability); *Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).  Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury.  *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation.  There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue."); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

Plaintiff's *Monell* claim against County Defendants fails for substantially similar reasons as stated in the Court's Opinion and Order dated March 25, 2020 against Defendant Aramark. (Dkt. No. 33.)  Plaintiff again alleges the existence of a policy to not accept food related

grievances.  Specifically, Plaintiff alleges that Spano and Delgrosso "directed supervisors not to accept grievances related to Aramark," and that because of other food related grievances and lawsuits that Spano and Delgrosso must have been aware of the issues with the food at WCDOC. (Am. Compl. at 4.)  But these claims must fail as Plaintiff "cannot state a 'consistent and widespread practice' simply by alleging his own experiences and then extrapolating to the entire jail population."  *Rutherford*, 2020 WL 433841, at *12; *see also Aragon v. New York*, No. 14-CV-9797, 2017 WL 2703562, at *6 (S.D.N.Y. June 22, 2017) (dismissing claims where "Plaintiff seems to allege the existence of a practice adopted by the [County] solely based on Plaintiff's alleged experience").  Plaintiff's claims that County Defendants were previously sued for similar conduct is similarly too general; Plaintiff does not describe the conduct alleged in these lawsuits in any detail, nor explain whether and how the conduct alleged in those suits was widespread and consistent.  "The absence of such detail dooms Plaintiff's [Amended] Complaint."  *Rivera*, 2019 WL 3958425 at *5 (collecting cases); *Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *5 (S.D.N.Y. Mar. 29, 2019) (dismissing *Monell* claim against Aramark and county alleging that the plaintiff was served unhygienic and inedible food where the plaintiff did not allege "the existence of any policy, any actions taken or decisions made by . . . policymaking officials, any systemic failures to train or supervise," or any "factual indicia from which this Court could infer the existence of a policy or custom"); *Hoffstead v. Aramark Corr. Servs.*, LLC, No. 18-CV-2381, 2019 WL 1331634, at *5 (S.D.N.Y. Mar. 25, 2019) (same); *McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012)

(dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case").  Given that Plaintiff has failed to allege any factual details to support his *Monell* claim against County Defendants, this claim too must be dismissed, along with any of his official capacity claims asserted against the individual County Defendants.

### III.  Conclusion

For the foregoing reasons, County Defendants' Motion To Dismiss is granted.[4]  Because this is the second adjudication of Plaintiff's claims, the dismissal is with prejudice.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting a motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (citation and alteration omitted)).

---

[4] As the Court has previously noted, allegations nearly identical to Plaintiff's extremely concerning claims regarding poor food sanitation and quality have recently been raised in numerous other actions against County Defendants and Aramark in this District. *See, e.g.*, *Rivera v. Westchester County*, No. 18-CV-8354, 2020 WL 5659645 (S.D.N.Y. Sept. 23, 2020); *Rutherford*, 2020 WL 433841; *Smith v. Westchester County*, No. 19-CV-1283, 2019 WL 5816120 (S.D.N.Y. Nov. 7, 2019); *Moore v. Westchester County*, No. 18-CV-7782, 2019 WL 3889859 (S.D.N.Y. Aug. 19, 2019); *Dawson v. Westchester County,* No. 18-CV-7790, 2019 WL 3408899 (S.D.N.Y. July 29, 2019); *Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020 (S.D.N.Y. July 25, 2019); *Crispin v. Westchester County*, No. 18-CV-7561, 2019 WL 2419661 (S.D.N.Y. June 10, 2019); *Mercedes*, 2019 WL 1429566; *Hoffstead*, 2019 WL 1331634; *Hanner v. Westchester County*, No. 16-CV-7610, 2019 WL 1299462 (S.D.N.Y. Mar. 21, 2019); *Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784 (S.D.N.Y. Mar. 7, 2019); *White v. Westchester County*, No. 18-CV-990, 2018 WL 6493113 (S.D.N.Y. Dec. 10, 2018); *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175 (S.D.N.Y. Mar. 30, 2018).  The Court impresses upon Counsel for Defendants that it take note and discuss the very serious allegations raised in these cases with their clients. Before too long, there will be a plaintiff who files a complaint sufficiently alleging a § 1983 claim related to food conditions at WCDOC that survives a Motion to Dismiss.

The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 53), and to mail a copy of this Order to Plaintiff.

SO ORDERED.

DATED:          November 30, 2020
                White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE